[Civ. 24153. First Dist., Div. Three. May 29, 1969.]

KIM GORDON, a Minor, etc., Plaintiff and Appellant, v. STRAWTHER ENTERPRISES, INC., et al., Defendants and Appellants.

Boccardo, Blum, Lull, Niland, Teerlink & Bell and Edward J. Niland for Plaintiff and Appellant.

Popelka, Graham, Hanifin, Van Loucks & Allard, Popelka, Graham, Van Loucks & Allard, Geoffrey Van Loucks, Robert J. Popelka, Maloney, Chase, Fisher & Hurst, Harold J. Chase and Lorin Castleman for Defendants and Appellants.

BROWN (H. C.), J.—This is an appeal by all parties from a judgment after jury verdict in the sum of $500,000 awarded to Kim Gordon, a minor, for injuries resulting from a fall into a swimming pool.

The defendants in the action were Strawther Enterprises, Inc., a corporation (hereafter referred to as Strawther), which was the legal owner of an apartment house complex which had on its premises as attraction to tenants a number of swimming pools. The other defendants in the action were Big North Enterprises, Inc., a corporation, and Arthur D. Alwen (hereafter referred to as Big North), who entered into an agreement to purchase the apartment house complex from Strawther. Big North was in control of the apartment house complex at the time of the accident but had not acquired legal title.

There were cross-complaints filed by the various parties named in the pleadings to establish between themselves and others the responsibility, if any, for the accident, but the present proceedings were limited to the plaintiff's action against Strawther as legal owner and against Big North as the equitable owner in possession and control. The jury awarded a verdict in the sum of $500,000 in favor of plaintiff as against Strawther, the legal owner, and rendered a verdict that plaintiff take nothing as against defendant Big North.

The trial court granted a new trial to plaintiff as against Big North on both issues of liability and damages, and also granted a new trial to Strawther but limited this new trial to the question of damages.

The trial court denied plaintiff's motion for judgment notwithstanding the verdict as against Big North.

Strawther contends that the trial court erred in not including in its order for a new trial the issue of liability, and also urges as prejudicial error the failure of the trial court to give requested instructions pertaining to the liability of an owner of the bare legal title of the complex out of possession.

Big North contends on its appeal that the trial court erred in granting a new trial so far as it was concerned. (This new trial applies to both issues of liability and damages.)

Plaintiff Kim Gordon's appeal has a two-fold objective: First, it contends that a new trial should not have been granted as to Strawther on the issue of damages and, second, that a judgment notwithstanding the verdict should have been granted as against Big North.

The evidence introduced against Strawther and Big North as to the negligence of each was of a negative rather than an affirmative character, i.e., their failure to secure the gates on the fences surrounding the swimming pools so that the gates could not be opened by infants or, if opened by anyone else, they would automatically close and latch. Particularly, both defendants were charged with the violation of a San Jose ordinance which required that swimming pools be fenced and that the access gates have self-closing and self-latching devices. It was conceded that there was no compliance with the ordinance.

As the verdict of the jury appears on its face to be incongruous in that the jury awarded judgment against the legal owner but not against the equitable owner in possession and control, and because each party contends there was error by the court in its ruling, the facts of the accident and the contractual and statutory obligations of the parties will be set forth in some detail.

On October 28, 1962, Mr. and Mrs. Gordon and their three children (one of whom was Kim, age 19 months) moved into the Lucretia Terrace Apartments. It was a new apartment complex consisting of 98 units and six swimming pools constructed by the defendant Strawther. When Mr. Gordon, the father of Kim, first saw the apartment he observed that the pools were fenced. He was assured by Alwen, who was an owner and also acted in a managerial capacity, that it was safe for children. On the morning of October 30, 1962, the 19-month old Kim was playing in the area adjacent to their apartment in the company of his brother who was a year

older. They could be observed by Mrs. Gordon from a window in her apartment while she was ironing. At about 11 a.m. she decided to bring the children inside but in the interval of putting another child to bed, Kim had disappeared. After about 15 minutes of searching, she observed two men removing Kim's unconscious body from the pool. The men who found Kim were employees of the Clear Water Pool Service who had been engaged by Big North to service the pools. There were no padlocks, wires, ropes, clamps or any locking devices (as required by the San Jose ordinances) of any kind on any of the gates to the pools. The pool service employees had worked on one of the pools in the complex and proceded to the next one where they observed Kim floating face downward in the water. They believed the child was dead but used mouth-to-mouth resuscitation and called the fire department. Efforts to restore breathing were undertaken by firemen and at the San Jose Hospital where emergency treatment was given. For at least 15 minutes Kim was not breathing.

Kim remained in the hospital for approximately two months, where he was in a coma and then a semi-coma. In December 1962 or early January 1963 he regained consciousness.

The apartment complex was constructed by the defendant Strawther, which had subcontracted with R. C. King for the construction of fences around the pools. On September 18, 1962, the San Jose public health sanitarian came to the premises and informed Strawther of the hazards of pools to young children and gave him a copy of San Jose Ordinance No. 9622 which required that the pools be fenced and that the gates be equipped with self-closing, self-latching devices. The public health sanitarian testified that sometime prior to the accident he also had advised the fencing contractor of the requirement for self-closing, self-latching devices on the fence gates. The fencing contractor stated to the sanitarian that the devices were available but that he had not ordered them, as requested, as they were not included in the original contract, and because he had not received full payment from Strawther for the fences. The fences were thereafter completed except for the omission of the latching devices.

Strawther testified he knew that in the absence of the self-closing and self-latching devices the gates would not close automatically. He was aware that some of the tenants had children, and he knew that the city required automatic locking devices in order to safeguard the lives of young children.

He did not have padlocks put on the gates. When he was in possession and control of the apartments, he directed his foreman to wire the gates shut and this was done, and also instructed him that the pools were not to be used under any circumstances. Strawther's foreman, in compliance with instructions, wired the gates shut and put up signs containing pool rules. He stated he could not keep the gates secured because children and college students continually untied the ropes and took off the wires. At the time control of the apartments was relinquished to Big North, the pools had not been formally opened for use by the tenants, but they were being used anyway.

Strawther relinquished the management and control of the Lucretia apartment house complex to Big North under an agreement dated August 15, 1962. The agreement provided that taxes, insurance and rentals were to be prorated as of October 15, 1962. Big North did not acquire legal title until January 1963 (after the accident) but took possession on October 15, 1962, while the transaction was in escrow and thereafter assumed the management and control. Alwen, who had an ownership interest, and David C. Irmer, president of Big North, took apartments in the complex. They had full charge of renting the apartments, collecting the rents, procuring insurance and paying the expenses of maintaining the apartments and pools from the rents. Although Big North was in possession of the apartment house complex at the time of the accident to Kim on October 30, 1962, Strawther, who was the original contractor of the apartment complex was obligated to complete some work on the apartments, including the installation of the self-closing, self-latching devices on the gates to the swimming pools.

Irmer was aware that the gates to the pools required manual operation to open and close; that the self-latching and self-closing devices had not been installed and that children resided in the apartments. There was evidence that Irmer had been informed of the city ordinance requiring these devices on the gates and that he had been instructed by the health department to keep the pools closed until the devices had been installed. Both president Irmer and part-owner Alwen of Big North were also aware that the pools were being used by tenants and were aware of the danger to children and the need for the locking devices. Neither Irmer nor Alwen ever took any steps to wire the gates or to put locking devices on them, and gave as their reasons that they had been told by

Strawther that the automatic devices were on order from a firm in Los Angeles. There was evidence that the devices were available in San Jose. Some doubt was cast upon the assertion that the devices had been ordered, as the fencing contractor testified that his original contract did not call for closing and latching devices, and he did not care to do business with Strawther because he had been paid with a check which was returned for insufficient funds. *The record is silent as to any action or effort by either Strawther or Big North to secure the gates during the interim between the date of ordering the latches from Los Angeles and the date of their actual delivery and installation. It was during this interim that the accident occurred to Kim Gordon.*

On October 26, 1962, an inspector for the city health department came to investigate a fly complaint from a tenant. He noticed that there were no locks on the gates and that the gate on the pool involved in the plaintiff's accident was open. He told Irmer about this and warned him that the gates should be secured by locks or wire for the protection of small children. Irmer agreed to secure the gates and informed the inspector that automatic closing devices had been ordered.

Irmer admitted the inspector had warned him of the dangerous condition of the gates and that the conditions should be corrected immediately. He denied that the inspector ordered the gates wired shut. Irmer stated that he phoned the office of Strawther about the incident and was informed by a secretary that the locking devices were on order. Neither Irmer nor anyone else did anything about the gates until after the accident. Immediately after the accident he purchased six padlocks from a local hardware store for one dollar each and put them on the gates. In a conversation with the city health department inspector after the accident, they commented about what an ironic situation this was since they had all been apprised of the situation, and they all knew that this was a dangerous situation to let go unattended.

Irmer testified that on the morning of the accident he had tried the gate and found it secure. He noticed for the first time that an outside post 15 or 20 feet away had apparently been hit by a vehicle which jammed the gate, but it was developed from other testimony that the damage to the corner post did not interfere in any way with the opening or closing of the gate.

The first question concerns the motion on behalf of plaintiff Kim Gordon for a judgment notwithstanding the verdict

against defendant Big North. We have concluded that this motion should be granted but the judgment should be limited to the issue of liability and that the issue of damages should be for further determination.

Code of Civil Procedure section 629 provides in part: "If . . . the motion for judgment notwithstanding the verdict be denied and if a new trial be denied, the appellate court shall, when it appears . . . *that the motion for judgment notwithstanding the verdict should have been granted,* order judgment to be so entered on appeal from the judgment or from the order denying the motion for judgment notwithstanding the verdict. [Italics added.]

"Where a new trial is granted to the party moving for judgment notwithstanding the verdict, and the motion for judgment notwithstanding the verdict is denied, the order denying the motion for judgment notwithstanding the verdict shall nevertheless be reviewable on appeal from said order by the aggrieved party. . . ."

It is recognized that where a jury renders a unanimous general verdict, such verdict imports findings in favor of the prevailing party on all material issues; and if the evidence supports implied findings on any set of issues which will sustain the verdict, it will be assumed that the jury so found. The court on appeal does not have to speculate on what particular ground the jury may have found in favor of the prevailing party. The scope of appellate review is to determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's conclusions, and where so found, it is proper for the trial judge to deny a motion for judgment notwithstanding the verdict. (*Markewych* v. *Altshules*, 255 Cal.App.2d 642 [63 Cal.Rptr. 335]; see also *Brandenburg* v. *Pacific Gas & Elec. Co.*, 28 Cal.2d 282, 284 [169 P.2d 909]; *Kincaid* v. *Sears, Roebuck & Co.*, 259 Cal. App.2d 733 [66 Cal.Rptr. 915].)

We also recognize that the grant or denial of a motion for a new trial or a motion for judgment notwithstanding the verdict to a large extent rests in the discretion of the trial judge. The appellate function is to review the discretion exercised by the trial court in light of the evidence but not to replace it unless it was arbitrarily exercised. (*Johnson* v. *Weinstein*, 249 Cal.App.2d 954 [58 Cal.Rptr. 32].)

Despite these basic rules and the denial by the trial court of the judgment notwithstanding the verdict, we feel that such judgment should be granted. (*Parker* v. *James*

*Granger, Inc.,* 4 Cal.2d 668, 678 [52 P.2d 226].)

The trial court stated that it was of the opinion that the defendants were *"clearly guilty of negligence proximately contributing to the accident, almost as a matter of law."* (Italics added.) In denying the motion for judgment notwithstanding the verdict, however, the trial court explained its decision as follows: "[T]he Court feels that were it not for the very narrow issue of *proximate cause,* this motion should be granted. The liability case against the defendants Big North Enterprises, Inc. and Arthur D. Alwen would appear to the Court to have been overwhelmingly proved. *However, on the narrow and almost inconceivable issue of the proximate connection between the negligence of these defendants and the resultant accident,* this Court feels compelled to deny the motion in view of the Appellate decisional law on directed verdicts." (Italics added.)

Relative to proximate cause the court in *Tate* v. *Canonica,* 180 Cal.App.2d 898, 901 [5 Cal.Rptr. 28], stated: "Proximate cause is legal cause, as distinguished from the layman's notion of actual cause, and is always, in the first instance, a question of law." (See also Prosser, *Proximate Cause in California,* 38 Cal.L.Rev. 369, 419-420.) It becomes a question of fact when conflicting inferences or conclusions can be drawn from the evidence within the area of proximate cause as legally defined.

Proximate cause does not appear to be a real issue from the evidence. There was no conflicting evidence as to proximate cause. While the court and jury could consider that there was some evidence pointing to either defendant Strawther or Big North being the more culpable, such conclusion would not exonerate either from liability. It is clear that the accident here was caused by the gate to the pool not being closed and the jury so found as against Strawther. It is also clear that the negligence of Strawther could not have exculpated Big North. It is basic that the negligence of a defendant need not be the sole cause. It is sufficient if it is a contributing cause. (*Custodio* v. *Bauer,* 251 Cal.App.2d 303, 316 [59 Cal. Rptr. 463].)

 Big North points to evidence that the pool was fenced and had a horseshoe lock on it which could not be opened by a child of 19 months. (It is to be noted here, however, that once opened, it required a manual operation to raise the horseshoe-type latch to close it.) From the foregoing facts, it is argued that the jury could have found that it was

not reasonable to foresee that the gate would be opened or that the pool would be a hazard to a child. We do not agree with this argument. *The underlying reason for the San Jose ordinance requiring a self-closing device was to foresee and guard against the possibility that the gate would be opened by someone who would neglect to close it.*

As we have heretofore pointed out, Irmer and Alwen, on behalf of Big North on October 15, 1962 (the accident occurred on October 30 1962), took possession and control of the apartment house complex, moved into apartments in the complex, hired their own employees, and employed a pool service company to maintain the pools. Both Irmer and Alwen of Big North had knowldge that the San Jose ordinance required closing and locking devices on the gates; that the pools were not to be used until the ordinance was complied with; and that the gates should be wired or locked and kept closed at all times. On the day of the accident, the gate to the pool was found to be unsecured and open. It is conceded that without the closing devices the gate had to be manually closed and opened and that there had not been compliance with the San Jose ordinance requiring self-closing, self-latching devices. It also was admitted that Irmer had observed children about the apartments and the pools and that he had knowledge of an earlier accident involving a child who, while riding a bicycle, fell into the pool. He further admitted that two inspectors from the City of San Jose had informed him that the failure to lock the pools constituted a dangerous condition that should be remedied immediately. *He acknowledged that he had been informed that the locks were on order from Los Angeles and knew that in the interim there was no protection against the gates being opened.*

There was some evidence that the gate had been damaged just prior to the accident and was jammed so that a young child could not have opened it. *The risk that was foreseeable was not the ability of a child to open the gate, but that someone could open it and leave it open. This is the risk that was foreseeable and the one which the ordinance was designed to prevent, and the one about which the defendants did nothing.*

Section 1714 of the Civil Code provides: ''Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care brought the injury on himself. . . .''

In *Rowland* v. *Christian*, 69 Cal.2d 108, 112-113 [70 Cal. Rptr. 97, 443 P.2d 561], the court stated: "Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy. [Citations.]

"A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]"

Not only would the fundamental principles of negligence apply to the defendant Big North, but more particularly the ordinance was a mandate to Big North as well as to Strawther. The San Jose ordinance provided as follows: "*On and after effective date . . . , no person who owns or is in possession of any premises, whether as legal or equitable owner, purchaser under contract, lessee, tenant, or licensee, shall construct, install, or place, or permit to be constructed, installed or placed, on or within such premises, any outdoor swimming pool . . . unless the same is enclosed in the manner hereinafter provided; . . .*" (Ordinance No. 8822; italics added.)

"*Each outdoor swimming pool . . . shall be completely enclosed by a fence, wall or other structure. . . . Each gate . . . , shall be equipped with a self-closing and self-latching device which shall, from the outside, be inaccessible to children of the age of five (5) years or younger.*" (Ordinance No. 8823; italics added.) The agreement between Strawther and Big North obligated Strawther to complete the swimming pools and to furnish the closing and locking devices, but such agreement, while possibly binding between the parties, does not excuse Big North from either compliance with the ordinance or the locking of the gates so far as Kim Gordon is concerned. (*Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 588 [177 P.2d 279]; *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 419-420 [218 P.2d 17].)

It is obvious that the jury was not concerned with proximate cause. The verdict against Strawther implies that the jury found proximate cause to be the violation of the ordinance, i.e., the open gate. *The evidence produced no other cause.* We agree with the trial court that the evidence was overwhelming as to the negligence of Big North. We disagree only with the trial court's views relative to the possibility of lack of proximate cause which we believe to be inconsistent with its ruling in granting a new trial to Strawther but limiting that new trial to the issue of damages.

▉ A motion for a directed verdict (or judgment notwithstanding the verdict) may be granted upon the motion of the plaintiff, where, upon the whole evidence, the cause of action alleged in the complaint is supported, and no substantial support is given to the defense alleged by the defendant. (*Walters* v. *Bank of America etc. Assn.,* 9 Cal.2d 46, 49 [69 P.2d 839, 110 A.L.R. 1259].) ▉ The case before us is one in which it is clear from all the evidence that the negligence of Big North was a proximate cause of plaintiff's injuries.

Big North was in possession and control of the complex and maintained it knowing that children were in the area and might stray into the pool area. The condition was such that it involved an unreasonable risk of death or bodily injury to children. The San Jose ordinance requiring the self-closing and self-latching devices applied to Big North and Strawther with equal force. The ordinance was violated. The reason given by Big North for failure to have the self-closing and self-latching devices or to otherwise secure the gates was, i.e., *that they had been assured by a secretary in the Strawther office that the devices had been ordered from Los Angeles, is but a paltry and trifling one and does not excuse or exonerate it for failure to secure the gates in some manner in the interim between their delivery and installation.* (*Satterlee* v. *Orange Glenn School Dist., supra,* 29 Cal.2d 581; *Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d 409.)

There is no substantial evidence in Big North's favor to excuse the violation of the ordinance. In passing upon the propriety of granting of the judgment notwithstanding the verdict, the doctrine that such judgment will be denied if there is a scintilla of conflict in the evidence has been rejected in this state. (See *Transport Clearings-Bay Area* v. *Simmonds,* 226 Cal.App.2d 405, 418 [38 Cal.Rptr. 116]; *Walters* v. *Bank of America etc. Assn., supra,* 9 Cal.2d 46, 49.)

We have therefore concluded that under the whole of the

evidence plaintiff's motion for judgment notwithstanding the verdict should have been granted by the trial court. The judgment should be limited, however, to the same judgment entered against Strawther, i.e., as to the issue of liability only, leaving the determination of the question of damages to a jury, or if a jury is waived, by the court, under appropriate instructions or appropriate findings of fact and conclusions of law, as the case may be, to the effect that the defendant is liable to the plaintiff as a matter of law and that on the issue of liability the facts require a verdict or judgment in favor of the plaintiff and against defendant. (See *Transport Clearings-Bay Area* v. *Simmonds, supra,* 226 Cal.App.2d 405, 431; *Kitigawa* v. *Williams,* 168 Cal.App.2d 123, 126 [335 P.2d 509]; *contra, Jach* v. *Edson,* 255 Cal.App.2d 96 [62 Cal.Rptr. 925].)

 It is next argued on behalf of Kim Gordon that the judgment notwithstanding the verdict should include the jury award in the sum of $500,000, and also that it was error to grant a new trial to Strawther on the issue of damages.

We accept, however, the reasons specified by the court in its order for new trial on the issue of damages and apply these reasons in both affirming the trial court's order as to Strawther and our action in limiting the judgment notwithstanding the verdict to the issue of liability.

The basis for the trial court granting Strawther's motion for a new trial solely as to damages were two: insufficiency of the evidence to justify the sum of $500,000; and excessive damages, appearing to have been given under the influence of passion or prejudice. The trial judge stated in specifying his reasons for granting the motion the following: ". . . It is also specifically found by this Court that the damages awarded by the jury appear to be excessive and to have been given under the influence of passion or prejudice. Though the jury was carefully instructed to eliminate the consideration of sympathy from their verdict, there were various elements of evidence, comments of counsel and arguments by the attorneys that advertently or inadvertently crept into the record and which it is felt substantially swayed the finder of fact from a rational consideration of the present value of the future loss sustained by this plaintiff. On the most conservative investment imaginable, the sums awarded would return to the plaintiff an income far in excess of what was reasonably necessary for his treatment, support, maintenance and care and this without ever invading the principal amount."

The court, thus, was of the opinion that there was conflict-

ing evidence upon which special damages and general damages could be predicated. Although there were no contradictions of the fact that Kim Gordon had suffered a brain injury which would have a permanent effect intellectually and physically, the expert witnesses did differ in their opinions as to the extent of Kim's ability to live independently and as to his future ability to earn a living. There was also a difference of opinion relative to the extent of his general damage and as to whether he would be able to marry, drive a car or live in the mainstream of life. The trial court was also of the belief that the amount awarded was far in excess of that which was reasonable. In this aspect of the damages the court's view was supported by the testimony of investment advisers relative to the income from investment of funds. The trial court sufficiently stated its reasons for its opinion that the jury was persuaded by an emotional appeal and awarded an excessive amount, and those reasons find support in the evidence.

On appeal from an order granting a new trial on the ground of insufficiency of the evidence, or on the ground of excessive damages, it is conclusively presumed that such order was made only for the reasons specified in the order. The order may be reversed as to these grounds only if there is no substantial basis in the record for any of the reasons given. (Code Civ. Proc., § 657.) In discussing the power of the trial judge to grant a motion for new trial, the California Supreme Court has recently described such power as "traditionally broad."

"Such a motion is addressed to the judge's sound discretion; he is vested with the authority, for example, to disbelieve witnesses, reweigh the evidence, and draw reasonable inferences therefrom contrary to those of the trier of fact; on appeal, all presumptions are in favor of the order as against the verdict, and the reviewing court will not disturb the ruling unless a manifest and unmistakable abuse of discretion is made to appear. [Citations.]" (*Mercer* v. *Perez,* 68 Cal.2d 104, 112-113 [65 Cal.Rptr. 315, 436 P.2d 315] ; also see *Gill* v. *Epstein,* 62 Cal.2d 611, 616 [44 Cal.Rptr. 45, 401 P.2d 397].)

We have concluded, therefore, that the trial court did not abuse its discretion in granting Strawther's motion for new trial but limiting its order to the issue of damages, and we believe that the reasoning of the trial court on the issue of damages as to Strawther applies with equal force as to the judgment notwithstanding the verdict against Big North.

Strawther contends that it should have been granted a

new trial on the issue of its liability, as well as on the issue of damages. Strawther argues that the court prevented it from presenting its theory of the case by refusing certain requested instructions and, further, that inflammatory statements by Kim Gordon's counsel not only resulted in an excessive award but also influenced the jury on the issue of liability.

The requested instructions would have advised the jury that Strawther was simply a legal owner out of possession and that by reason of the contract of sale the purchaser, Big North, as the equitable owner became the owner for all purposes.

The evidence as to Strawther's duty to complete the installation of the self-closing, self-latching gates, their knowledge of the presence of children on the premises and the danger to them is clear. *Not only were they obligated to secure the gates by reason of their contract with Big North, but also the ordinance of the City of San Jose specifically named the owners as the persons obligated.* To have granted their motion as to all issues would involve a costly repetition of testimony, which a limited trial seeks to avoid. (*Mercer* v. *Perez, supra,* 68 Cal.2d 104, 112-113; *Yarrow* v. *State of California,* 53 Cal.2d 427, 434-435 [2 Cal.Rptr. 137, 348 P.2d 687]; *Mazzotta* v. *Los Angeles Ry. Corp.,* 25 Cal.2d 165, 169 [153 P.2d 338].)

We also find no merit in the contention that inflammatory remarks of counsel influenced the jury in its consideration of the issue of liability. The evidence of the negligence of both defendants, together with the violation of the ordinance, was overwhelming, and it is clear that this negligence was the proximate cause of the accident and ensuing injuries. There is no reason to believe that the jury was influenced by considerations other than the evidence in finding Strawther negligent. The case does involve the probability of sympathetic considerations relative to the issue of damages. We do not decide this issue but hold that the trial court was in a better position to judge the effect of the evidence and arguments on the jury, and that it did not abuse its discretion in ordering that the issue of damages be reconsidered on new trial and in refusing a new trial on the issue of liability.

Big North has appealed from the reversal of the jury verdict in its favor by the trial court's order for a new trial. We have, however, disposed of the issues raised by that appeal by directing the trial court to enter a judgment notwithstanding the verdict in favor of Kim Gordon against Big North on the issue of liability.

Therefore (1) the order granting a new trial in favor of plaintiff Kim Gordon against Big North and Arthur D. Alwen as to the issue of liability is reversed; (2) the order denying the motion for judgment notwithstanding the verdict in favor of Big North and Arthur D. Alwen is reversed and that phase of the case is remanded with directions to the trial court to render judgment in favor of plaintiff Kim Gordon and against defendants Big North and Arthur D. Alwen on the issue of liability, leaving the issue of damages only to be determined on retrial by a court or jury, as the case may be; (3) the judgment in favor of Kim Gordon as against Strawther is affirmed except that such judgment be limited to the issue of liability, and (4) the order of the trial court granting a new trial to Strawther on the sole issue of damages is affirmed.

The parties to bear their own costs incurred in this appeal.

Draper, P. J., and David, J., pro tem.,* concurred.

A petition for a rehearing was denied June 27, 1969, and the petition of the defendants and appellants for a hearing by the Supreme Court was denied July 23, 1969.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.