[Civ. No. 56328. Second Dist., Div. Five. May 16, 1980.]

RODNEY S. SPRIGG et al., Plaintiffs and Appellants, v.
ROBERT W. GARCIN et al., Defendants and Appellants.

COUNSEL

Moore & Myers and John C. Moore for Plaintiffs and Appellants.

Chase, Rotchford, Drukker & Bogust and David Clark for Defendants and Appellants.

OPINION

THOMAS, J.*—These are appeals by each group of parties from those orders described below in civil No. 59366, one of the two consolidated actions. Plaintiffs Rodney S. Sprigg and Gisela Goetten Sprigg, husband and wife, appeal from the order of the trial court which granted a motion for new trial after the jury had returned a verdict for the plaintiffs while defendants cross-appeal from the judgment entered on the verdict and from the order of the trial court denying their motion for judgment notwithstanding the verdict.[1]

The facts out of which the actions were brought are as follows: plaintiffs owned a warehouse building which Columbia Pictures Industries, Inc. (Columbia), leased from them for a term which, with extensions, ran from 1944 through May 31, 1970. The lease provided, inter alia, that "...upon the termination...[Columbia] will deliver possession of said demised premises to the Lessor in good condition and repair...and place the building in the same condition as it was at the time possession was delivered to said Lessee." After Columbia vacated the warehouse on or about May 31, 1970, Sprigg visited the warehouse, concluded that considerable renovation was due under the aforementioned lease provision and promptly employed the defendant law firm to represent him in the matter. Although Sprigg chose the defendant law firm for reason of his friendship with defendant James B. Irsfeld, Jr., primary responsibility for the matter was given to defendant Robert W. Garcin, a partner in said firm, who in turn assigned Thomas Gamble, an associate in the firm, to do certain work on it. Thereafter on June 24, 1970, Sprigg and Garcin met with a representative of Columbia to discuss the condition of the warehouse. During the discussion Sprigg, without having earlier discussed the matter with his attorney, orally offered to Columbia's representative that "....if Columbia would pay $25,000 now, why, I would wash out the whole thing and take my chances." Sprigg later pri-

---

*Assigned by the Chairperson of the Judicial Council.

[1]Civil No. 59366, a professional (legal) negligence action, was consolidated with civil No. 79977, an action brought by Garcin et al., against the Spriggs for attorneys fees. A verdict was returned and judgment thereon was entered for Garcin et al. in civil No. 79977. The parties then stipulated that a new trial was to be ordered in civil No. 79977 if ordered in civil No. 59366; pursuant thereto the trial court ordered a new trial in civil No. 79977 when it ordered a new trial in civil No. 59366.

Each set of parties in the trial court was both plaintiffs and defendants and here are both appellants and respondents. For convenience we refer to Mr. and Mrs. Spriggs collectively as "plaintiffs" and Garcin et al., as "defendants" in all context of reference. Mr. R. S. Sprigg is referred to as "Sprigg."

vately informed defendants that the $25,000 was only "a starter" and that he really would not settle for that sum; there is no evidence that at any later time Sprigg modified this direction to defendants.

Columbia refused Sprigg's apparent offer but did expend something in excess of $25,000 in certain restoration work on the warehouse which plaintiffs considered inadequate. Therefore, on June 7, 1971, the defendant firm filed a complaint which sought rent for the period commencing on June 1, 1970; this was on the theory that during the period when restoration was incomplete monthly rental continued. After answering, Columbia made a motion for summary judgment upon which the trial court, on December 21, 1971, entered an order granting a partial summary judgment. The "partial" was for the reason that although the court ruled that "...as a matter of law...the lease...expired, and came to an end on May 31, 1970, and that no further obligation of lessee to pay rent under said lease accrued subsequent to said date...," the court ordered "...that the action proceed as to the entitlement of plaintiff to further 'restoration.'" Defendants took this to perhaps be a direction that plaintiffs file an amended complaint seeking damages against Columbia for its failure to restore the warehouse, and therefore drafted, but never filed, an amendment to the complaint to so allege.

During the entire time, there were a number of inspections of the warehouse and memos thereon made by Sprigg and a great deal of correspondence between Sprigg and defendants and some between defendants and Columbia concerning both the necessity for additional restorative work and possible settlement of the action. However, the relationship between plaintiffs and defendants steadily deteriorated for a number of reasons and finally in November 1972, Attorney Max E. Gilmore was substituted as plaintiffs' attorney in their action against Columbia.

Gilmore thereafter prepared an amended complaint which was filed in January 1973. Through this plaintiffs sought, inter alia, damages for the sums they already had put into the restoration of the warehouse and for the additional cost which would be required to put the warehouse in that condition required by the covenant in the lease. Attorney Gilmore believed that the complaint included allegations sufficient to recover damages for loss of use by plaintiffs during the restoration period. Columbia answered but in May 1973, the entire action was settled through Columbia's payment of $25,000 to plaintiffs and an exchange of releases.

The settlement was followed by plaintiffs' filing this professional negligence action. After trial, the jury returned a general verdict for plaintiffs in the amount of $34,640.31. Judgment was entered thereon after which defendants moved for a new trial and for judgment notwithstanding the verdict. The trial court granted the motion for a new trial but denied the motion for judgment notwithstanding the verdict, from which orders the parties appeal as described above.

■ Dispositive of issues on these appeals is our conclusion that the trial court erred in denying the defendants' motion for judgment notwithstanding the verdict. We reverse and order, pursuant to Code of Civil Procedure section 629, that judgment be entered for defendants in civil No. 59366.

The test for measuring a motion for judgment notwithstanding the verdict is set out in *Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282]: "The trial judge's power to grant a judgment notwithstanding the verdict is identical to his power to grant a directed verdict. (*Jones v. Evans* (1970) 4 Cal. App.3d 115, 122 [84 Cal.Rptr. 6]; *Gordon v. Strawther Enterprises, Inc.* (1969) 273 Cal.App.2d 504, 515 [78 Cal.Rptr. 417, 39 A.L.R.3d 809]; 4 Witkin, Cal. Procedure (2d ed. 1971) § 374, p. 3168.) The trial judge cannot weigh the evidence (*Quintal v. Laurel Grove Hospital* (1964) 62 Cal.2d 154, 159 [41 Cal.Rptr. 577, 397 P.2d 161]), or judge the credibility of witnesses. (*Knight v. Contracting Engineers Co.* (1961) 194 Cal.App.2d 435, 442 [15 Cal.Rptr. 194].) If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied. (*McCown v. Spencer* (1970) 8 Cal.App.3d 216, 226 [87 Cal.Rptr. 213]; *Hozz v. Felder* (1959) 167 Cal.App.2d 197, 200 [334 P.2d 159].) 'A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied.' (*Brandenburg v. Pac. Gas & Elec. Co.* (1946) 28 Cal.2d 282, 284 [169 P.2d 909].)" Our review of the record convinces us that no evidence or reasonable inference therefrom was offered from which the jury properly could find that defendants' activities legally (proximately) caused injury to plaintiffs. This absence of the essential element of causation precludes recovery by plaintiffs. (Rest. 2d Torts, § 281 (c).)

There certainly was evidence that when Columbia vacated the premises on May 31, 1970, it had failed to restore them as it was obligated to do in the lease agreement. There was evidence also that although thereafter Columbia did substantial work on the premises it failed to completely restore them and that said failure caused plaintiffs to expend $24,867.31 in work on the premises and to be faced with additional restoration expenses of $26,440. There was also some evidence that plaintiffs were unable to rent the premises for a 34-month period after Columbia vacated and that this was due to the unfitness of the premises. Thus, there was evidence that Columbia's failure to perform under the lease resulted in financial injury to plaintiffs.

There also was evidence from which the defendants' negligence in representing plaintiffs could be inferred. The defendants' choice of theory upon which to found the original complaint may have been negligent; defendants' use of Gamble, in the face of Sprigg's objections, in drafting documents, undertaking research and orally arguing the opposition to Columbia's motion for summary judgment, perhaps was negligent. The defendants' failure to file an amended complaint after the partial summary judgment may have been below the standard of care at which the defendants were obligated to perform.

But the record simply is devoid of any evidence from which it can be inferred that the defendants' negligent acts caused any injury to plaintiffs. No statute of limitations ran or affirmative defense assertable by Columbia was raised by reason of defendants' activities. Although there was expert testimony given that the partial summary judgment precluded continued maintenance of a claim for reasonable rental during the restoration period, Attorney Gilmore testified that the amended complaint which he filed included allegations sufficient for the plaintiffs' recovery of all damages suffered by them, including damages for loss of use during the restoration period, and there was no evidence that the settlement which Gilmore eventually negotiated with Columbia was in an amount smaller than it would have been except for defendants' activities. (See Mallen & Levit, Legal Malpractice (1977) § 346, p. 430.) To the contrary, Gilmore testified that the reasons for his settlement with Columbia for $25,000 were "...Mr. Sprigg had made an offer to settle for $25,000, and that psychologically put a ceiling on the settlement....it is very hard to convince people that they should give you more by way of settlement...," Sprigg's advanced age (he was in his eighties), and Mrs. Sprigg's physical condition (she had Parkinson's

Disease). None of these reasons were at all related to defendants' earlier management of the case. Thus, there is no evidence that defendants' acts, negligent or not, affected Gilmore's management of plaintiffs' action or settlement thereof.

That Gilmore received an $8,333.33 fee is uncontroverted, but no evidence was offered that defendants' fees would have been less if they had continued to represent plaintiffs.

The trial court granted a new trial in civil No. 79977 in which a judgment for $956 in defendants' favor had been entered. Said order was on the ground that the judgment was against the law (Code Civ. Proc., § 657, subd. 6), in that the two verdicts were "hopelessly inconsistent." The instant ruling eliminates whatever inconsistency may have existed; therefore we reverse the order of the trial court granting a new trial in civil No. 79977 and reinstate the judgment in civil No. 79977.

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied May 30, 1980, and the petition of plaintiffs and appellants for a hearing by the Supreme Court was denied July 9, 1980.