716 P.2d 1031

**Harriet TENNEN, Plaintiff/Appellant,**

v.

**Robert L. LANE and Elsa Lane, husband and wife, Defendants/Appellees.**

**No. 2 CA–CIV 5480.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 18, 1985.

Review Denied April 1, 1986.

Renaud, Cook & Videan, P.C. by James M. Videan, Phoenix, for plaintiff/appellant.

---

Monbleau, Vermeire & Turley by Albert R. Vermeire, Phoenix, for defendants/appellees.

## OPINION

BIRDSALL, Presiding Judge.

This appeal is from a directed verdict against the plaintiff, Harriet Tennen, in a legal malpractice claim against the defendant, Robert L. Lane, an attorney practicing in Phoenix. The verdict was directed because the trial court found, as a matter of law, that no evidence showed that the malpractice, if any, was a proximate cause of any damage to the plaintiff. The obvious issue on appeal is whether this finding was error. We reverse.

The facts giving rise to the appellant's claim, viewed in the most favorable manner to her, follow. The appellant was married to Bob Tennen in Mexico in 1963. Her prior marriage was dissolved in a Mexican divorce proceeding shortly before her marriage to Tennen. Bob Tennen was in the jewelry business in Tucson at the time of the marriage, but had accumulated little or no wealth. After a brief time in Tucson, they moved to Phoenix, where his business prospered. His Phoenix business was incorporated and he was the sole stockholder. Although nominally a director, the appellant did not participate in the management of the business. She did, however, help in the business by making deliveries between the Phoenix stores, doing design work, setting up store windows, and making molds and castings.

Sometime prior to June 8, 1979, Bob agreed to sell the business to a Delaware corporation for $920,000, payable $170,000 at closing and the balance of $750,000 by deferred payments over five years. The buyers were required to pay the seller's income tax resulting from the sale. He did not tell Harriet about this proposed sale.

On June 8, Harriet and Bob went to the appellee's office and executed a "Declaration of Property Agreement." That agreement provided, in part, that the stock in the jewelry corporation was Bob's separate property. The appellee did not explain the agreement to Harriet, nor did Bob. Neither did the appellee advise Harriet that she should have independent legal advice. The agreement was not a property settlement in contemplation of divorce. There was no marital discord at that time. Harriet signed the agreement without reading it. She was not told about the pending sale. Harriet believed the appellee was her attorney. He had previously written her will, which he was safekeeping in his office. He had also been counsel for the corporation, and Bob's attorney.

Before proceeding with the purchase, the buyers requested that Harriet consent to the sale and prepared an "adoption, ratification and consent." On June 12, Bob, one of the buyers, and the appellee took this form to the appellant at her home, where Bob asked her to sign it. Bob told the appellant she was signing something for the I.R.S. No one explained the document to her, and she signed without knowing what she was signing. The appellee notarized her signature on that agreement. We set forth that agreement in its entirety:

"I, the undersigned, wife of Robert Tennen, do hereby acknowledge that I have carefully read the foregoing Stock Purchase Agreement and all exhibits made a part thereof (hereinafter called the "Agreement"), and I understand its meaning and effect; that I fully and truly consent to, approve of and join in the purposes of the Agreement and the wisdom of the Agreement's provision; that I do hereby make fully and unconditionally subject to the terms of the Agreement any community property interest that I may now or hereafter have in any property referred to in the Agreement (including, without limitation, any and all shares of capital stock referred to in the Agreement as the Shares, and any and all cash sums delivered or to be delivered pursuant to the Agreement, any and all promissory notes delivered or to be delivered pursuant to the Agreement, and the proceeds of each of the

foregoing), and that I promise and agree to execute any and all instruments, to be fully bound by all applicable terms and conditions of the Agreement and to do any and all things necessary and proper to accomplish the purposes set forth in the Agreement. I do hereby irrevocably appoint my husband, my Attorney-in-Fact for the purposes of modifying, amending, supplementing or terminating the Agreement and I do hereby authorize, approve, ratify, confirm and adopt any such modification, amendment, supplement or termination as may at any time, and from time to time, be made by my husband. I hereby agree that I am and shall be bound by the terms and conditions of the Agreement as surviving spouse, heir, legatee, executrix and/or administratrix in the event that I shall survive my husband."

About two and one-half weeks after June 12, 1979, Bob, at Harriet's request, gave her a copy of the declaration of property agreement. This was just before he left on a trip to Europe. On February 11, 1980, Harriet, represented by new counsel, filed a petition for dissolution of the marriage. In that petition she also sought to have the property agreement set aside, alleging that it had been fraudulently procured. Bob was present in Arizona and first appeared in the dissolution by the appellee, attorney Lane. However, shortly thereafter new counsel was substituted to represent him. An answer and counterclaim for annulment were filed on his behalf. The annulment pleading theorized that the Mexican marriage was invalid. However, before the dissolution action could be tried, Bob discounted the balance owing on the sale of the jewelry business and disappeared with the money. The appellant has never received any of the proceeds from the sale.

With Bob gone to places unknown, his attorney was permitted to withdraw and the dissolution proceeded as a default. It was heard by Judge Cecil B. Patterson, Jr. The decree, which was entered February 25, 1981, contained a finding that the husband had disappeared and that a court receiver had been appointed on that date to handle the liquidation of the property allocated in the decree to the husband and "for the location of assets secreted by the husband." The decree awarded the marital home to the appellant and ordered the sale of another house, with the sale proceeds to go to her. It also awarded her an automobile and up to $500,000 of the proceeds from the sale of the business, with the remainder of the $1,000,000 sale price to go to the husband. The decree also found that the marriage was valid and the declaration of property was invalid, "as having been procured at a time the wife was not represented, was not able to understand the content of the document, was not informed as to the content of the document, and her signature on this document was procured in an unfair manner." The property agreement was set aside.

The complaint in the legal malpractice action from which this appeal is taken was filed March 24, 1981. The verdict was directed May 2, 1983, and judgment entered May 27. The appellant testified she would not have signed the property agreement or the consent if she had known what they were. However, the appellee argues that no evidence shows what would have happened had she not signed. He points out that although two of the buyers' attorneys' depositions were taken, they were never asked what the buyers would have done without the property agreement or the consent.[1] The stock was in Bob Tennen's name. He could have sold it without the appellant's consent. He could, likewise, have sold the business, or taken the jewelry. For these reasons he contends that what would have happened, but for the malpractice is pure speculation.

■ We agree with the appellee that, when the evidence presented in a negligence action fails to show a causal connection between the tort and the damage, a directed verdict is mandatory. *Green v. Jennings*, 26 Ariz. 132, 222 P.2d 1039

---

1. This evidence was before the court on pretrial motions but was not evidence in the trial.

(1924). Where proof of causation would be left to the jury's speculation, a directed verdict is properly entered. *Shaner v. Tucson Airport Authority, Inc.*, 117 Ariz. 444, 573 P.2d 518 (App.1977). Although proximate cause is a question of fact to be determined by a jury, if no evidence would permit a finding of such cause, the question is one of law for the court to decide. *Flowers v. K–Mart Corporation*, 126 Ariz. 495, 616 P.2d 955 (App.1980). Although we find no legal malpractice decision in Arizona containing the above legal principles, the decisions of our sister states have applied these principles in such cases. See *Sprigg v. Garcin*, 105 Cal.App.3d 869, 164 Cal.Rptr. 677 (1980); *Collins v. Greenstein*, 61 Haw. 26, 595 P.2d 275 (1979); *Blue Water Corp., Inc. v. O'Toole*, 336 N.W.2d 279 (Minn.1983); *Chalet Apartments v. Farm & Home Savings Association*, 658 S.W.2d 508 (Mo.App.1983).

■ However, the converse of these principles must be observed when there is evidence of a causal connection between the negligence and the damage. The attorney representing the appellant in the dissolution testified that because of the declaration of property agreement, she was unable to tie up the sales proceeds as she would have been able to do absent the agreement. She testified that, but for that document, the property would have been presumed to be the community property of the parties, and that the effect of the agreement was to render that presumption was no longer valid. She testified further that the preliminary injunction issued by the clerk of the superior court pursuant to A.R.S. § 25–315 would then have applied to that property. That order enjoins the parties from transferring, encumbering, concealing, selling, or otherwise disposing of any of their joint, common, or community property without the written consent of the other party or the permission of the court. This evidence is sufficient to create a question of fact to be decided by the jury on the issue of proximate cause. If the husband had been enjoined, he could not have absconded with the property without violating the court's order. That is the appellee's argument to

show the connection between the tort and her damage.

The trial court believed, and the appellee urges on appeal, that it was necessary for the appellant to prove what would have happened with regard to the sale, but for the negligence. We disagree. The evidence showed what happened with the negligence, and this is all that appellant was required to prove. See *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983) (evidence held to permit a finding that because the defendant was served too much liquor he caused an automobile collision; *Brand v. J.H. Rose Trucking Co.*, 102 Ariz. 201, 427 P.2d 519 (1967) (when there is any evidence of negligent conduct which reasonable men might infer was one of the proximate causes of an accident, the cause must be submitted to the jury). *Ofstedahl v. City of Phoenix*, 129 Ariz. 85, 628 P.2d 968 (App.1981). There was evidence that the appellee's negligence was a proximate cause of damage to the appellant, and the trial court therefore erred in directing a verdict. "The question of proximate cause is usually for the jury and it is only when reasonable persons could not differ that the court may direct a verdict on the issue." *Markowitz v. Arizona Parks Board and State of Arizona*, 146 Ariz. 352, 358, 706 P.2d 364, 370 (1985).

The appellee also contends that the Tennen's marriage in Mexico was invalid and therefore the jewelry business could not have been community property. See *Cross v. Cross*, 94 Ariz. 28, 381 P.2d 573 (1963). This question was presented to the trial court in two motions for summary judgment. In the first motion, the appellee argued that Harriet's Mexican divorce was invalid and therefore she could not have contracted a valid marriage to Tennen. The trial court rejected that contention but, in the same under-advisement ruling, held: "[h]ad the issue of the validity of the Mexican marriage of the parties been litigated in Tennen v. Tennen, Tennen would have been estopped to deny the validity of the Mexican marriage." In the second motion, the appellee successfully contended that

the Tennen's Mexican marriage was invalid because it occurred only eighteen days after Harriet's divorce. Evidence was offered to show that the law of Mexico, the civil code of the state of Sonora, and the national code of Mexico required a ten-month waiting period before remarriage, or a waiting period of one year following a voluntary divorce. Where the marriage does not comply with the requirements of the place where contracted, there is no marriage. See *Gamez v. Industrial Commission*, 114 Ariz. 179, 559 P.2d 1094 (App. 1976). Also, at the time of the marriage, A.R.S. § 25–320, requiring that parties wait one year before a new marriage, was still in effect. The trial court's ruling on this second motion was that the Tennen's Mexican marriage was invalid. However, the trial court did not set aside its previous ruling that Bob Tennen was estopped to deny the validity of the marriage. This was no oversight. In a later statement to counsel in another hearing concerning evidentiary questions, the trial judge noted that he had already ruled that Mr. Tennen was estopped to claim the marriage invalid. Trial counsel did not disagree.

The appellee has not presented the question of whether Bob Tennen would have been estopped as an issue in a cross-appeal. That procedure is necessary to obtain appellate review. See *Santanello v. Cooper*, 106 Ariz. 262, 475 P.2d 246 (1970); *Hackin v. Gaynes*, 103 Ariz. 13, 436 P.2d 127 (1968); *DeLozier v. Smith*, 22 Ariz.App. 136, 524 P.2d 970 (1974).

The trial court also ruled, however, that appellee was not precluded by the divorce decree from attacking the validity of the marriage. Thus appellee argues that as a result of this ruling and the trial court's ruling that the marriage was invalid, appellant "was foreclosed as a matter of law from asserting any theory of recovery depending upon the existence of a marital community." This argument misses the mark. The property in which appellant claims an interest either belonged to her, or to her former husband, or both. As a result of the dissolution decree, the validity of which is unchallenged, she was deter-mined to have a vested and enforceable interest in that property *as against Tennen*. The existence and validity of that interest *as against Tennen* is not properly the subject of litigation in this action. Rather, the only issue here is whether, as a result of appellee's alleged malpractice, she was unable to enforce the rights she was subsequently determined to possess *as against Tennen*.

We want to make it abundantly clear that the only issue presented on appeal is the sufficiency of the evidence of proximate cause, i.e., was there enough to make the defendant go forward with his evidence. The record contains other evidence from which the jury could have found that the appellee did not commit malpractice, that there were intervening, superceding causes and that the alleged malpractice was not a proximate cause. We do not decide any of those issues. The jury was foreclosed from deciding them.

Reversed.

LACAGNINA and FERNANDEZ, JJ., concur.