[No. G023980. Fourth Dist., Div. Three. Dec. 28, 2000.]

WESTREC MARINA MANAGEMENT, INC., et al., Plaintiffs and Appellants, v.
JARDINE INSURANCE BROKERS ORANGE COUNTY, INC., et al., Defendants and Appellants.

COUNSEL

Troop Steuber Pasich Reddick & Tobey, Mary K. Barnes, Lori M. Yankelevits and Kirk A. Pasich for Plaintiffs and Appellants.

Coblentz, Patch, Duffy & Bass, Frederick F. Fields and Andrew H. Schwartz for Defendants and Appellants.

OPINION

**RYLAARSDAM, Acting P. J.**—Plaintiffs, Westrec Marina Management, Inc., and Westrec Properties, are marina managers; defendants, Jardine Insurance Brokers Orange County, Inc., Jardine Insurance Brokers, Inc., Jardine Insurance Brokers Los Angeles, Inc., and Edward Gottlieb, are insurance brokers. Plaintiffs allege defendants breached their contract, their fiduciary duty, and their professional duty by (1) placing an insurance policy at a premium higher than the best available price (the Marina Placement) and (2) entering into a contract with a third party that impeded plaintiffs' ability to offer boat insurance to their clients (the Boat Program).

The jury rendered a verdict in favor of plaintiffs on both claims, but found against them on a fraud claim. Defendants accepted the verdict with respect to the Boat Program. With regard to the Marina Placement, the court granted defendants' motion for a new trial and denied their motion for a JNOV (judgment notwithstanding the verdict). Both parties appeal. Plaintiffs contend: (1) the time for granting a new trial had expired; (2) the court

improperly excluded expert testimony regarding the Boat Program; and (3) the court improperly refused to submit the question of punitive damages to the jury. Defendants contend the court erroneously denied their motion for a JNOV.

Because Code of Civil Procedure section 1013, subdivision (a) (all further statutory references are to the Code of Civil Procedure unless otherwise indicated), which extends the time to act when notice is served by mail, does not apply to the 60-day time limit for granting a new trial, the grant was untimely and we reverse this order. We affirm the judgment on the verdict. The court did not abuse its discretion by concluding there was insufficient foundation for the proffered expert testimony, nor did the court err in denying the motion for a JNOV. Because plaintiffs failed to request the jury be asked to determine they had proven, "by clear and convincing evidence that the defendant[s] had been guilty of oppression, fraud or malice" (Civ. Code, § 3294, subd. (a)), the trial court did not err by refusing to conduct a trial on punitive damages.

## FACTS

Plaintiffs are affiliated corporations which own and manage marinas and other coastal properties. Westrec Marina Management is the largest marina management firm in the United States and operates nationwide. The evidence did not generally distinguish between the separate plaintiffs or the separate defendants; and we therefore deal with them collectively.

### The Marina Placement

Defendants had been placing property and casualty insurance for plaintiffs for two years when they told plaintiffs, just before the time of renewal of their policy, that their premium would double from $849,000 to $1.7 million per year. Defendants had informed plaintiffs three months earlier that their primary insurer, Generali, had ceased writing policies for marinas.

Defendants contacted two insurers who refused to quote on a policy for plaintiffs, but they primarily relied on another broker, Alexander Howden, and its employee, Deborah Warner, to obtain the new coverage. During the previous year, Warner had placed policies for about 300 marinas, including plaintiffs' account, with Generali. After Generali refused to renew the policies, Warner placed all her other marina accounts with Anglo American, with an increase in premium of 20 to 30 percent. Warner did not ask Anglo American to quote plaintiffs' account, but using the rates Anglo American supplied, estimated that plaintiffs' premium for insurance from that carrier

would approximate $2 million. Warner then placed the insurance through a competitor of Alexander Howden for $1.7 million.

Plaintiffs thereafter retained another broker in an effort to obtain a lower premium. Three months later the new broker procured a policy for $1.374 million per year. The new policy was not identical to the previous one; it had some better features and some that were worse. Plaintiffs' expert, Richard Masters, testified the replacement policy was of comparable quality, and both policies provided the same coverage for the claims that were actually made.

Defendants' expert witness, Arlan Brown, had placed insurance for many marinas during the period involved. He testified there were approximately 25 insurers capable of handling plaintiffs' account and did not think he could have secured a better policy than the one defendants were able to obtain. Plaintiffs' expert witness, on the other hand, estimated that plaintiffs could have been provided a comparable policy for a premium of $1 million per year. He opined that plaintiffs were unable to obtain insurance for that premium later in the year because of commitments already made in the insurance markets and the need to obtain a reduced premium quickly.

*The Boat Program*

In return for a portion of the commissions earned on the policies, plaintiffs offered insurance to boat owners who rented slips under a program arranged by defendants through another broker, American Yacht Society (AYS). When this program, which had been in effect for slightly less than two years, had grown to cover 600 to 700 clients, plaintiffs were forced to terminate it because of problems with AYS. Plaintiffs immediately started a similar program through another broker, but that broker terminated the arrangement because of a conflicting contract between AYS and defendants. There was a six-month gap before plaintiffs were able to obtain new coverage for this program.

DISCUSSION

*Time Limit for Granting a Motion for New Trial*

The court granted a new trial 61 days after plaintiffs served notice of entry of judgment on defendants by mail although section 660 requires the court to rule on such a motion within 60 days. Section 1013, subdivision (a), extends certain deadlines when service is made by mail. We are to decide whether section 1013 extends the deadline for the court to act under section 660.

*Meskell v. Culver City Unified School Dist.* (1970) 12 Cal.App.3d 815 [96 Cal.Rptr. 773] held that section 1013, subdivision (a), did not extend the time for a trial court to grant a motion for a new trial. But defendants argue subsequent amendments to section 1013, subdivision (a), destroy the basis for the *Meskell* holding. When *Meskell* was decided, section 1013 extended time for an "adverse party" to act. A 1980 amendment eliminated those words from the statute. A 1995 amendment added a sentence to the end of subdivision (a): "This extension applies in the absence of a specific exception provided for by this section or other statute or rule of court." Although not specifically addressing the arguments raised here, at least one case decided after these amendments held "[t]he court must resolve the motion by 60 days from the date of mailing of notice of entry of the judgment; this time period is jurisdictional. [Citations.]" (*Erikson v. Weiner* (1996) 48 Cal.App.4th 1663, 1672 [56 Cal.Rptr.2d 362].)

Whether or not section 1013, subdivision (a) applies to persons other than the recipients of the notice, a proposition we reject as discussed below, it clearly contemplates that the notice requires some action: "[A]ny right or duty to do any act or make any response . . ." is extended. But section 660 may operate without the court performing any act or making any response. Defendants conveniently overlook the part of section 660 that provides, "If such motion is not determined within said period of 60 days . . . the effect shall be a denial of the motion without further order of the court." Once the 60 days had run, the motion was denied by operation of law, and the court lacked jurisdiction to act on it.

Defendants' interpretation of section 1013, subdivision (a), applies the statute to any deadline that starts with service by mail. The statutory language does not expressly contradict this interpretation. Plaintiffs' interpretation applies the section only to the person served by mail; again the section is capable of such construction. In the sentence "[t]he service is complete at the time of the deposit," "service" refers to transmitting a document to the *recipient* (§ 1013, subd. (a)). The succeeding sentence, extending time, does not expressly limit its application to this recipient. We therefore have at least a latent ambiguity. ██ "[W]here the language may appear to be unambiguous yet a latent ambiguity exists, the courts must go behind the literal language and analyze the intent of the law utilizing 'customary rules of statutory construction or legislative history for guidance. [Citation.]' [Citation.]" (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 215 [89 Cal.Rptr.2d 295].) ██ We therefore look to the legislative history of the 1980 amendment deleting the phrase "adverse party" from the statute.

This legislative history supports the conclusion that the extension of time applies only to the party served. Senate Bill No. 1664 (1979-1980 Reg. Sess.), which amended section 1013 by eliminating the "adverse party" language, was introduced at the request of the State Bar of California. The bar noted the language of the statute was "awkward and fail[ed] to encompass those situations where the *recipient party* is under a legal obligation to act or respond." (Ralph F. Simoni, Legis. Rep., State Bar, letter to Governor Edmund G. Brown, Jr., June 10, 1980, p. 2, italics added.) The amendment requested new language to expand "the application of the increased time periods to any duty which *the party served* is required to perform." (*Ibid.*, italics added.) It is thus clear that in promoting this amendment, the bar intended for the extension of time to apply only to the party served. This is consistent with instances where documents may be served on someone other than an adverse party; for example, interrogatories may be served on a codefendant. (§ 2030, subd. (a); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2000) ¶ 8:919, pp. 8F-5 to 8F-6 (rev. #1, 1997).) Until the 1980 amendment, it was unclear whether the codefendant recipient of such interrogatories, not being an adverse party, could rely on an automatic time extension.

The records of the Senate Committee on the Judiciary and the Assembly Committee on the Judiciary confirm an interpretation limiting the time extension to persons or entities served. The reports of both committees state that the amendment would "expand the applicability of the increased time periods to any duty that the *party served* would be required to perform." (Sen. Com. on Judiciary, rep. on Sen. Bill No. 1664 (1979-1980 Reg. Sess.) p. 2; Assem. Com. on Judiciary, dig. of Sen. Bill No. 1664 (1979-1980 Reg. Sess.) p. 1, italics added.)

Because section 1013, subdivision (a), did not extend the time beyond 60 days, the motion for a new trial was granted after the trial court lost jurisdiction to act. The order is reversed.

*Punitive Damages*

■ Upon a defendant's motion, a trial must be bifurcated when a plaintiff seeks punitive damages (Civ. Code, § 3295, subd. (d).) The court granted such a motion at the beginning of the trial. At the conclusion of the first phase of the trial, the jury found defendants breached a fiduciary duty, and also found they had not committed fraud. Plaintiffs then asked the court to proceed to a second phase of the trial for the jury to determine the amount of punitive damages to be awarded for breach of fiduciary duty. The court refused to do so and dismissed the jury.

Before punitive damages may be awarded, a plaintiff must prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).) This proof must be presented during the first phase of the bifurcated trial. (Civ. Code, § 3295, subd. (d); Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 1999) ¶ 4:379, p. 4-85 (rev. #1, 1998).) Plaintiffs did not request that the jury be instructed on these issues. Nor did they ask the court to have the jury determine whether there was clear and convincing evidence of oppression or malice. (The jury did determine under a preponderance of the evidence standard that defendants were not guilty of fraud, the third possibility for punitive damages.) Because plaintiffs failed to ask the court to have the jury make the requisite findings, the court acted properly in refusing a trial on punitive damages.

Plaintiffs cite *Devers v. Greenwood* (1956) 139 Cal.App.2d 345 [293 P.2d 834] and *Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal.App.4th 1367 [58 Cal.Rptr.2d 336] in support of the proposition that the jury should have been allowed to consider whether punitive damages were appropriate based on defendants' breach of fiduciary duty. These cases do not override the requirements of Civil Code sections 3294 and 3295. In *Devers*, "[T]he trial court specifically found . . . that [the defendant acted] deliberately and maliciously, with intent to oppress and defraud the plaintiff . . . ." (*Devers v. Greenwood, supra*, 139 Cal.App.2d at p. 350.) The *Heller* court stated that "punitive damages are recoverable for . . . breach of fiduciary duty" (*Heller v. Pillsbury Madison & Sutro, supra*, 50 Cal.App.4th at p. 1390), but affirmed a nonsuit as to punitive damages, "especially given the burden of proof which is higher than the preponderance-of-the-evidence burden of proof required for Heller's causes of action." (*Id.* at p. 1391.)

Although the jurors found defendants breached their fiduciary duty, they did so under a preponderance of the evidence standard. Plaintiffs did not ask the jury to be instructed with the clear and convincing evidence standard upon which a finding of entitlement to punitive damages must be based.

*Exclusion of Plaintiffs' Expert Testimony*

At a hearing under Evidence Code section 402, plaintiffs' expert estimated that 2,000 boats would have been insured during the period when no coverage was available for the Boat Program. He based his opinion on insurance programs offered in enterprises other than marinas, including boats insured through a program at a boat storage facility in Alaska and physicians a hospital insured through its group program. He did not survey

any marinas to determine the percentage of boats insured through their programs. The court ruled that Masters was not qualified to present evidence regarding profits lost in the Boat Program.

"[A]nticipated profits dependent upon future events are allowed where their nature and occurrence can be shown by evidence of reasonable reliability. [Citations.]" (*Grupe v. Glick* (1945) 26 Cal.2d 680, 693 [160 P.2d 832].) Here the trial court interpreted "reasonable reliability" to require "reliable statistical information" and "data to analyze [the] market," and held that the proffered testimony did not meet this standard.

" ' "The trial court is given considerable latitude in determining the qualifications of an expert and its ruling will not be disturbed on appeal unless a manifest abuse of discretion is shown." ' " (*People v. Davenport* (1995) 11 Cal.4th 1171, 1207 [47 Cal.Rptr.2d 800, 906 P.2d 1068].) The court's interpretation of the requirement of "reasonable reliability" and its application to Masters's proposed testimony was not an abuse of discretion.

*Denial of Defendants' Request for JNOV*

■ Defendants argue the court erred in denying their motion for a JNOV regarding the Marina Placement. They contend substantial evidence does not support the amount of damages awarded.

The jury found damages of $352,791 attributable to the Marina Placement. Warner testified that her other marina accounts had been placed with an average increase of 20 to 30 percent. Masters testified to a 20 percent increase in premium. A 30 percent increase would result in a premium of $1,103,700. If this amount is compared with the actual premium charged, the resulting difference approximates the damages found by the jury.

All of the witnesses engaged in searching for marina policies during the relevant time period testified that insurance was available at the expiration of plaintiffs' previous policy. Warner did not find insurance available for plaintiffs for less than $1.7 million, and Brown did not think that he could have found insurance available for less than $1.7 million. Masters estimated a cost of $1 million. The jury heard the reasons for the opinions of all three. None of the witnesses presented quotes from another insurer to cover plaintiffs other than the eventual premium of $1.374 million obtained three months later. If the jury believed the $1.374 million and $1.7 million policies were comparable based on Masters's testimony, and it also believed his testimony regarding the reasons for the increased premium, based on Masters's and Warner's testimony it could infer that a comparable policy

could have been found with a premium of 130 percent of the prior year's premium.

A motion for JNOV may be granted only when no substantial evidence supports the jury's verdict. (*Sprigg v. Garcin* (1980) 105 Cal.App.3d 869, 873 [164 Cal.Rptr. 677].) The motion must be denied if reasonable inferences can be drawn from the evidence supporting the verdict. (*Ibid.*) This case is not like the cases cited by defendants where no evidence supported the verdict. Reasonable inferences from the evidence support the jury's verdict. The court properly denied defendants' motion.

DISPOSITION

The order granting a new trial is reversed. The judgment on the jury verdict is affirmed. Plaintiffs shall recover their costs on appeal.

Bedsworth, J., and O'Leary, J., concurred.