[No. B079742. Second Dist., Div. Seven. May 19, 1994.]

RICHARD D. NORTON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ZACK EIN et al., Real Parties in Interest.

COUNSEL

Hawkins, Schnabel, Lindahl & Beck, George M. Lindahl and Allison D. Cato for Petitioner.

No appearance for Respondent.

Ruben, Crispi & McGonigle, Steven J. Ruben and Patrick F. Reynolds for Real Parties in Interest.

OPINION

JOHNSON, J.—In this action, plaintiffs are suing petitioner for legal malpractice in the settlement of their suit for property damage against the City of Palos Verdes (hereafter the City). Petitioner demanded production of all documents containing the terms and conditions of plaintiffs' recovery from their own insurer for the same property damage that was the subject of the suit against the City. Citing the collateral source rule and other grounds, plaintiffs refused to produce the requested documents. The trial court denied petitioner's motion to compel production. Petitioner seeks a writ of mandate directing the trial court to vacate its ruling and to issue an order compelling plaintiffs to comply with his discovery demand.

We will issue a writ ordering the trial court to vacate its ruling and to reconsider the question whether the demanded material could be admissible or could reasonably lead to the discovery of admissible evidence and, if it could, to order plaintiffs to produce the material.

### FACTS AND PROCEEDINGS BELOW

Plaintiffs Zack and Ellen Ein, real parties in interest, owned a home in the City. A series of landslides did substantial damage to the Eins' home and they brought an inverse condemnation action against the City. Defendant Richard Norton, petitioner, represented the Eins in the Palos Verdes lawsuit.

While the Palos Verdes lawsuit was pending, the Eins brought an action against State Farm Insurance Company for failing to indemnify them for the same property damage at issue in the Palos Verdes suit. A different attorney represented the Eins in the State Farm lawsuit.

In October 1989, the Eins settled their suit against the City by transferring title to the property to the City in return for $1.85 million and a "limited life estate." In May 1990, the Eins settled their lawsuit against State Farm for an undisclosed sum.

Following settlement of their suits against the City and State Farm, the Eins initiated the present legal malpractice action against Norton. The Eins allege Norton was negligent in negotiating the settlement terms with the City resulting in adverse tax consequences and that he pressured the Eins into accepting the amount of the settlement.

Norton served a demand for production of documents on the Eins. (Code Civ. Proc., § 2031.) The demand called on the Eins to produce "any and all documents, including but not limited to a complete copy of the settlement agreement, setting forth the terms and conditions of settlement of the [State Farm lawsuit]."

The Eins response to this demand for production stated the only document containing the terms and conditions of the settlement agreement was the agreement itself and that they would not produce this document. They based their refusal to produce the document on the following grounds: (1) the settlement agreement with State Farm is irrelevant to any matter in the present malpractice action against Norton; (2) the settlement agreement will not lead to the discovery of any admissible evidence in this action; (3) discovery of the Eins' private financial information contained in the settlement agreement would violate their right to privacy; and (4) discovery of the settlement agreement is barred by the attorney-client privilege and the attorney work product rule.[1]

Norton moved for an order compelling production of the State Farm settlement agreement. The trial court denied the motion and Norton filed this

---

[1] The Eins did not urge the latter two grounds in the trial court or here.

petition for writ of mandate. We issued an alternative writ in order to consider the application of the collateral source rule to a legal malpractice action and the question whether the settlement agreement could be discoverable even if the collateral source rule applies.

## DISCUSSION

I. *The Amount of the Eins' Settlement With State Farm Is Not Admissible for the Purpose of Mitigating the Damages the Eins Would Otherwise Recover From Norton.*

Code of Civil Procedure section 2017, subdivision (a) provides in relevant part, "[A]ny party may obtain discovery regarding any matter not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." ■ Thus, in order to be discoverable, the information sought must meet a two-pronged test. It must be (1) relevant to the subject matter involved in the pending action, and (2) *either* admissible in evidence *or* reasonably calculated to lead to the discovery of admissible evidence.

■ Although Norton's discovery demand was for documents containing the "terms and conditions" of the Eins' settlement with State Farm, the parties have primarily focused on the narrow question whether the amount of the settlement would be admissible at trial and, therefore, discoverable.

The Eins contend evidence of the amount of their settlement with State Farm is inadmissible in the present action under the collateral source rule. ■ The collateral source rule provides ". . . if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." (*Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398].) Thus, under the collateral source rule, evidence of compensation from an independent third party is not admissible to mitigate damages. (*Acosta* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 19, 25-26 [84 Cal.Rptr. 184, 465 P.2d 72].)[2] ■ No reported decision in

---

[2]We discuss in part II the extent to which such payments may be admissible to prove some other fact.

California has decided the question whether the collateral source rule applies to prevent the mitigation of damages in a legal malpractice action.[3]

In *Helfend* v. *Southern Cal. Rapid Transit Dist.*, *supra*, our Supreme Court engaged in an extensive review of the policy arguments for and against the collateral source rule and reaffirmed its adherence to the rule as it has developed in California. In the context of insurance payments for medical treatment, where the rule is most frequently applied, the court stated the collateral source rule "embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift. [¶] If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance." (2 Cal.3d at pp. 9-10.) The court also noted insurance policies increasingly provide for either subrogation or refund of benefits upon recovery from the tortfeasor thus transferring the risk from the victim's insurer to the tortfeasor by way of the victim's tort recovery. (*Id.* at pp. 10-11.) The court explained that viewed from this perspective the collateral source rule does not permit the plaintiff a double recovery as critics of the rule have charged. (*Ibid.*) The court concluded its analysis of the rule by stating: "We therefore reaffirm our adherence to the collateral source rule in tort cases in which the plaintiff has been compensated by an independent collateral source—such as insurance, pension, continued wages, or disability payments—for which he had actually or constructively . . . paid or in cases in which the collateral source would be recompensed from the tort recovery through subrogation, refund of benefits, or some other arrangement." (*Id.* at pp. 13-14.)

Norton does not dispute the fact the collateral source rule would have barred *the City* from introducing evidence of the Eins' insurance proceeds to mitigate *the City's* damages in the underlying lawsuit. He argues, however,

---

[3]In *Kirtland & Packard* v. *Superior Court* (1976) 59 Cal.App.3d 140, 145 [131 Cal.Rptr. 418], the court held the collateral source rule did not apply to a legal malpractice action in which the plaintiff was a defendant in the underlying action because he failed to establish he was an "injured party" and the insurance company which made the payment at issue was not "wholly independent" of the defendant attorneys.

Two courts in other jurisdictions have addressed this issue. In *Houghton* v. *Leinwohl* (1977) 135 Vt. 380 [376 A.2d 733, 737], the court, without discussion, held the rule applied. *Horn* v. *Moberg* (1993) 68 Wn.App. 551 [844 P.2d 452, 458], expressed the same view in dictum.

In *Bourke* v. *Warren* (1982) 118 Mich.App. 694 [325 N.W.2d 541, 543], an attorney was allowed to introduce evidence the plaintiffs had suffered no injury as a result of his alleged malpractice because they recovered the value of their loss in a separate suit against their own property insurer. However, the opinion does not mention the collateral source rule.

the policy reasons which bar the City from introducing evidence of the Eins' insurance settlement do not apply to the introduction of such evidence on the issue of damages in the present legal malpractice action. The Eins, he points out, were insured against the risk of property damage. They were not insured against the risk of damages from their attorney's negligence. Thus, the insurance benefits the Eins received were not as a result of their "providence" and foresight in protecting themselves against the risk of attorney malpractice. (Cf. *Helfend* v. *Southern Cal. Rapid Transit Dist., supra*, 2 Cal.3d at pp. 9-10.) Furthermore, he argues, the subrogation rationale for the collateral source rule is not applicable here as there is no showing the Eins' recovery from Norton will be passed-through to State Farm.

Norton's argument has some merit. The "subrogation" rational relied on by the court in *Helfend* may not apply here. (But see *post*, pp. 1761-1762.) We also find in *Helfend* a note of caution against expanding the collateral source rule beyond its settled applications. The court stated, "We agree with Professor Fleming's observation . . . that 'double recovery is justified only in the face of some exceptional, supervening reason, as in the case of accident or life insurance, where it is felt unjust that the tortfeasor should take advantage of the thrift and prescience of the victim in having paid the premium.' . . ." (2 Cal.3d at p. 10, citation omitted.) Furthermore, the court expressly declined to "consider or determine the appropriateness of the rule's application in the myriad of possible situations which we have not discussed or which are not presented by the facts of this case." (2 Cal.3d at p. 6, fn. 3.)

On the other hand, it can be argued Norton interprets the scope of the collateral source rule too narrowly. Surely, the rule as it is commonly stated is broad enough to cover the payments the Eins received from their insurer. That payment constituted "compensation for injuries" from a "source wholly independent of the tortfeasor." (See *Helfend* v. *Southern Cal. Rapid Transit Dist., supra*, 2 Cal.3d at p. 6; and see Rest.2d Torts (1977) § 920A.) The proceeds the Eins received from their insurer did represent a return on investment. (2 Cal.3d at p. 10.) Furthermore, not every case in which a California court has applied the collateral source rule involved insurance payments from the plaintiff's insurer or even anticipation of the injury which occurred. In *Lewis* v. *County of Contra Costa* (1955) 130 Cal.App.2d 176 [278 P.2d 756], the court held the collateral source rule prohibited evidence that at the time of the accident plaintiff had accumulated sufficient sick leave to cover the period of his disablement. In *Philip Chang & Sons Associates* v. *La Casa Novato* (1986) 177 Cal.App.3d 159 [222 Cal.Rptr. 800] the court held the collateral source rule barred evidence that under its Federal Housing Authority mortgage plaintiff could raise its tenants' rents to recover damages caused by a leaky roof.

Be that as it may, we have concluded the application of the collateral source rule to this case turns not on policy but on practicality. As we shall explain more fully below, due to the unique nature of a legal malpractice action, being the trial of a "suit within a suit," the defendant attorney stands in the shoes of the underlying tortfeasor insofar as the collateral source rule is concerned. Thus, the collateral source rule applies indirectly in a way which makes evidence of payments from a collateral source irrelevant on the question of damages.

■ In a legal malpractice action, the attorney is liable for all the damages proximately caused by the negligent act or omission. (*Smith* v. *Lewis* (1975) 13 Cal.3d 349, 362 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231].) Where the attorney's negligence does not result in a total loss of the client's claim, the measure of damages is the difference between what was recovered and what would have been recovered but for the attorney's wrongful act or omission. (*Lally* v. *Kuster* (1918) 177 Cal. 783, 791 [171 P. 961]; *Sprigg* v. *Garcin* (1980) 105 Cal.App.3d 869, 874 [164 Cal.Rptr. 677]; 2 Mallen & Smith, Legal Malpractice (3d ed. 1989) § 24.36, p. 520.) ·

Thus, in a legal malpractice action, if a reasonably competent attorney would have obtained a $3 million recovery for the client but the negligent attorney obtained only a $2 million recovery, the client's damage due to the attorney's negligence would be $1 million—the difference between what a competent attorney would have obtained and what the negligent attorney obtained.

■ The amount of damages remains the same even if the client received an insurance payment from its insurer covering some or all of the injury in the underlying action. This is because, under the collateral source rule, the insurance payment could not have been used to reduce the recovery from the tortfeasor in the underlying action. Since the insurance payment is not taken into account in determining the award of damages in the underlying action, the client in the above example would still have lost $1 million—the difference between the $3 million the competent attorney would have recovered and the $2 million the negligent attorney recovered.

To see how the collateral source rule relates to the computation of damages in the present case, assume the Eins can prove that if they had gone to trial on their claim against the City a reasonably competent attorney would have obtained a judgment for $3 million but because of Norton's negligence in settling the case they only received $2 million. The Eins' recovery in their action against the City would not have been affected by the

fact they received a $1 million insurance settlement from State Farm. Therefore, the Eins' damages in the present legal malpractice action would be $1 million: the difference between what they would have recovered through competent legal representation and what they in fact received because of Norton's negligent representation. In the example given above, the Eins could have kept the $1 million insurance settlement and still have received the full $3 million judgment against the City compared to the $2 million settlement arranged by Norton: a loss of $1 million.

As the foregoing examples illustrate, the loss suffered by the clients for purposes of a malpractice claim is the same whether or not they received an insurance payment covering some or all of the loss they suffered in the underlying action. Therefore, evidence of such a payment is logically irrelevant to the determination of damages in the malpractice action.[4]

It could be argued the result we reach in this case would allow the plaintiff in a legal malpractice action a "double recovery."[5] We disagree. To the extent there is a double recovery in this action, it is the result of the fact the plaintiffs in the underlying action against the City would have been permitted by the collateral source rule to retain the full amount of the damage award without an off-set for any benefits paid by their insurer. The result we reach in this case merely allows the plaintiffs in a legal malpractice action to be made whole. The plaintiffs receive no more and no less than they would have received if there had been no malpractice.

II. *The Trial Court Should Determine Whether the Terms and Conditions of the Settlement Agreement Are Admissible in Evidence or Whether Their Discovery Appears Reasonable Calculated to Lead to the Discovery of Admissible Evidence.*

Our holding the amount of the Eins' insurance settlement is not admissible for purposes of reducing their damages only eliminates one

---

[4]We recognize there could be situations, not present here, in which a collateral source payment might be relevant in a legal malpractice action based on negligence in negotiating a settlement. If, for example, the payment was received while settlement negotiations were underway in the underlying action, receipt of that payment might well influence what the parties were willing to offer and accept in settlement. (See 4 Harper et al., The Law of Torts (2d ed. 1986) § 25.22, p. 669.) Similarly, knowledge that the plaintiffs had received an insurance payment covering some or all of their loss might be relevant to the reasonableness of their attorney's evaluations and recommendations regarding the opposing party's settlement offers. (See 2 Mallen & Smith, *supra*, § 24.36, pp. 520-521.) Note, however, this evidence would be relevant to the question whether the attorney was negligent in negotiating the settlement, not to the question of the amount of damages suffered by the client assuming negligence is established. The foregoing examples are not applicable in the present case because the settlement was negotiated by a different attorney and was not procured until approximately seven months after the Eins settled with the City.

[5]See 1 Mallen and James, *supra* (supp. 1993) section 16.20, pages 353-354.

possible theory supporting discovery. We must still determine whether the terms and conditions of the settlement agreement, including the amount of the settlement, are discoverable under some other theory. ■ The answer to this question depends on whether the terms and conditions of the settlement agreement are relevant to the subject matter of the pending action and whether they are directly admissible or could reasonably lead to the discovery of admissible evidence. (Code Civ. Proc. § 2017, subd. (a).)

Relevancy to the subject matter of the litigation is a much broader concept than relevancy to the precise issues presented by the pleadings. (*Pacfic Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 172 [84 Cal.Rptr. 718, 465 P.2d 854].) "The 'subject matter of the action' is the circumstances and facts out of which the cause of action arises; it is the property, contract, or other thing involved in the dispute; it is not the act or acts which constitute the cause of action, but describes physical facts in relation to which the suit is prosecuted." (*Darbee* v. *Superior Court* (1962) 208 Cal.App.2d 680, 688 [25 Cal.Rptr. 520].) Information is "relevant to the subject matter" if its discovery will tend to promote settlement (*Pettie* v. *Superior Court* (1960) 178 Cal.App.2d 680, 688 [3 Cal.Rptr. 267]) or assist the party in preparing for trial (*Davies* v. *Superior Court* (1984) 36 Cal.3d 291, 301 [204 Cal.Rptr. 154, 682 P.2d 349]). ■ Clearly, discovery of the terms and conditions of State Farm's settlement of the Eins' property damage claim could assist in reaching a settlement or preparing for trial in the present action. Therefore, the first prong of the discoverability test is met.

The second prong of the discoverability test can be satisfied by showing the information sought to be discovered is itself admissible in evidence.

The admissibility of evidence often turns on the purpose for which it is offered. A well-known example is the distinction between evidence of an out-of-court statement offered to prove the truth of the matter stated and an out-of-court statement offered to prove some other fact. The former statement is inadmissible unless it comes within an exception to the hearsay rule; the latter statement is admissible unless barred by some other rule of evidence. Similarly, in cases where the collateral source rule bars evidence of insurance benefits for the purpose of mitigating damages it does not necessarily bar introduction of such evidence for some other purpose. (*Hrnjak* v. *Graymar, Inc.* (1971) 4 Cal.3d 725, 733 [94 Cal.Rptr. 623, 484 P.2d 599, 47 A.L.R.3d 224].)

■ Furthermore, in a discovery dispute over admissibility of evidence, the issue is the admissibility of the evidence *vel non.* The possibility evidence otherwise admissible might be excluded at trial under Evidence

Code section 352 or some other evidentiary objection is not a relevant consideration for purposes of ruling on a discovery motion. (*Davies* v. *Superior Court, supra,* 36 Cal.3d at p. 301.)

■ Information which is not directly admissible in the action is nevertheless discoverable if it is reasonably calculated to lead to the discovery of admissible evidence.

In accordance with the liberal policies underlying the discovery procedures, California courts have been broad-minded in determining whether discovery is reasonably calculated to lead to admissible evidence. (*Pacific Tel. & Tel. Co.* v. *Superior Court, supra,* 2 Cal.3d at p. 172; *Pettie* v. *Superior Court, supra,* 178 Cal.App.2d at p. 687.) As a practical matter, it is difficult to define at the discovery stage what evidence will be relevant at trial. Therefore, the party seeking discovery is entitled to substantial leeway. (*Pacific Tel. & Tel. Co., supra,* 2 Cal.3d at p. 172.) Furthermore, California's liberal approach to permissible discovery generally has led the courts to resolve any doubt in favor of permitting discovery. (*Id.* at p. 173.) In doing so, the courts have taken the view if an error is made in ruling on a discovery motion, it is better that it be made in favor of granting discovery of the nondiscoverable rather than denying discovery of information vital to preparation or presentation of the party's case or to efficacious settlement of the dispute. (See 2 Hogan, Modern Cal. Discovery (4th ed. 1988) § 11.2, p. 11; and see *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266].) The courts have also taken the view that wherever possible objections to discovery should be resolved by protective orders addressing the specific harm shown by the respondent as opposed to a more general attack on the "relevancy" of information the proponent seeks to discover. (*Pacific Tel. & Tel., supra,* 2 Cal.3d fn. 11 at p. 171; *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d at p. 392; *West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 418 [15 Cal.Rptr. 119, 364 P.2d 295].)

■ Bearing these principles in mind, we conclude it is possible the terms and conditions of the State Farm settlement agreement could be, or could lead to, admissible evidence. The requested information could result in evidence of the extent of the Eins' injury from the alleged malpractice, their motive in bringing the malpractice action, or their bias and credibility as witnesses. For example, the settlement agreement might provide State Farm would make a *future* payment to the Eins up to a certain amount depending on the amount they recover from Norton. In the settlement with State Farm the Eins might acknowledge the two settlements together constitute a complete satisfaction for all their injuries. Or, the settlement agreement might

provide that in return for State Farm's payment of their property damage claim the Eins agree to sue Norton for malpractice in obtaining an inadequate settlement with the City and to subrogate State Farm to that claim or turn over the proceeds of any recovery to State Farm.[6]

Not having seen the settlement agreement we can do no more than suggest hypotheticals in which the agreement would be discoverable. However, the trial court did not view the document either and therefore could not make an informed decision about whether some or all of it was discoverable. The appropriate remedy, we believe, is to remand this matter to the trial court with directions to review the State Farm settlement agreement in camera and determine, consistent with the views expressed in this opinion, whether some or all of it should be produced to Norton and under what restrictions, if any.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its ruling denying petitioner's motion to compel production of documents and ordering the court to reconsider its ruling in light of the views expressed in this opinion and an in camera inspection of the settlement agreement between respondents and the State Farm Insurance Company and to determine whether some or all of said settlement agreement should be ordered produced to petitioner and under what conditions or restrictions, if any.

Lillie, P. J., and Woods (Fred), J., concurred.

---

[6]Norton argues the terms and conditions of the settlement are discoverable because they could relate to the Eins' state of mind at the time they settled their action against the City. We find this argument unpersuasive. It will be recalled the settlement with the City was consummated approximately seven months *before* the settlement with State Farm. It is highly unlikely the Eins could have had the State Farm settlement in mind when they entered into a settlement with the City seven months earlier.