[No. H015185. Sixth Dist. Dec. 2, 1996.]

HINSHAW, WINKLER, DRAA, MARSH & STILL et al., Petitioners, v. THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent; DARREL L. KAUFFMAN et al., Real Parties in Interest.

**COUNSEL**

Robinson & Wood and Jesse F. Ruiz for Petitioners.

No appearance for Respondent.

Chapman, Popik & White, William B. Chapman and Mark A. White for Real Parties in Interest.

**OPINION**

**WUNDERLICH, J.**—The Hinshaw law firm petitions for a writ of mandate/ prohibition regarding the trial court's order permitting discovery of the confidential settlement in a doctors' class action suit against Kaiser Foundation Hospitals (Kaiser). The underlying action, brought by plaintiffs and real parties Doctors Kauffman and Chronister, is legal malpractice against Hinshaw for dropping them from the case before it settled. Because we find the material sought is protected by the right to privacy, we will grant the petition.

### STATEMENT OF FACTS

This writ petition arises out of an action for legal malpractice brought by plaintiffs against their former lawyers, the Hinshaw law firm (petitioner). The original lawsuit was entitled Muhawi v. Kaiser Foundation Hospitals (Super. Ct. Santa Clara County, 1992, No. 718428) and was brought by 23 physicians against Kaiser and related entities for grievances related to Kaiser's purchase of Santa Teresa Hospital in 1976 and its operation of the facility. The Hinshaw firm represented all the plaintiffs in the Muhawi action.

Kauffman and Chronister dismissed their claims against Kaiser, for reasons which are in factual dispute. Then the remaining Muhawi plaintiffs

settled their claims with Kaiser pursuant to a settlement agreement with a confidentiality provision.

Later another group of physicians sued Kaiser for similar claims, in an action entitled Heller v. Kaiser Foundation Hospitals (Super. Ct. Santa Clara County, 1993, No. 735457), referred to as the Heller action. Kauffman and Chronister tried to join in that action but were informed that the dismissal of their claims in the Muhawi lawsuit, with prejudice, barred their participation in the Heller lawsuit.

Kauffman and Chronister then sued the Hinshaw firm for malpractice. This discovery dispute arose when Kauffman and Chronister (plaintiffs) sought to subpoena information about the settlements achieved in the Muhawi and Heller lawsuits. After a hearing on plaintiffs' motion to compel this discovery, the trial court ordered petitioner and the Dyer & White law firm to produce information on the Heller settlement: the amount of the settlement and how it was divided up between the plaintiffs;[1] all documents that describe or relate to the loss of income, loss of referrals, or other damages suffered by each of the plaintiffs in the Muhawi action as a result of Kaiser's misconduct; and all documents that would assist the court or jury in determining the amount of damages Kauffman and Chronister suffered as a result of their inability to participate as plaintiffs in the Heller action. The last of these categories was explained in the court order as requiring production of (1) documents reflecting work performed in the Muhawi litigation for Kauffman and Chronister as well as for the other plaintiffs, and (2) the amounts received in the Muhawi settlement and the method of apportioning that settlement among the individual plaintiffs.

The trial court qualified its order by saying that names of individual plaintiffs in the Heller action could be redacted from documents to protect their privacy, and documents protected by attorney client or work product privilege or subject to the "right of privacy" did not need to be produced. The court intended that plaintiffs should receive enough information to determine what they would have received had they been a part of the Heller plaintiff group.

## CONTENTIONS

Petitioner contends that there is no precedent for this invasion of the privacy rights of the settling plaintiffs. It contends that these plaintiffs'

---

[1]After initially objecting on privacy grounds, the law firm of Dyer & White elected to produce the requested documents from the Heller action, with names redacted and subject to a protective order.

theory of damages in the malpractice suit is entirely unprecedented and would turn every legal malpractice case into a search for the "settlement value" of the lost claim, even though California precedent uniformly rejects such a theory of damages. Petitioner maintains there is no connection or relationship between the amounts of settlements achieved by the litigating plaintiffs, and the value of the claims lost by the dismissed plaintiffs. Had the dismissed plaintiffs remained in the lawsuit, the amount of the settlement might have been different, or even unachievable at all; thus they contend this evidence is purely speculative as to the value of the claims lost by these plaintiffs.

Petitioner also contends the material is essentially private in nature. The measure of damages in the Muhawi action was the loss of income to the plaintiff physicians as a result of Kaiser's transformation of Santa Theresa Hospital to an institution which excluded fee-for-service physicians. Therefore, the settlement and its allocation reflect the income lost by the physicians over a period of years, and therefore is arguably as private and sensitive as tax returns, bank statements, or other private financial information which has been afforded privacy protection.

Because the court order directs production of allegedly private materials, there is no adequate remedy other than writ review. (See, e.g., *Davis* v. *Superior Court* (1992) 7 Cal.App.4th 1008, 1012 [9 Cal.Rptr.2d 331].)

## DISCUSSION

Private financial information is worthy of protection in discovery. (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656-657 [125 Cal.Rptr. 553, 542 P.2d 977].) The need for such discovery is balanced against the need for privacy protection in resolving such disputes. When seeking to discover such material, the proponent must make a higher showing of relevance and materiality than would be necessary for less sensitive material. (*Id.* at p. 657.)

Below the plaintiffs relied heavily on the case of *Norton* v. *Superior Court* (1994) 24 Cal.App.4th 1750 [30 Cal.Rptr.2d 217]. That case was a legal malpractice action in which clients sued the law firm which had handled the settlement of their suit for property damage against a city. The law firm sought production of all documents containing the terms and conditions of plaintiffs' recovery from their own insurer for the same property damage that was the subject of their suit against the city. Plaintiffs objected based on the collateral source rule, and the trial court denied the law firm's motion to compel on that basis. (*Id.* at pp. 1753, 1762.) The appellate court ruled that

although the collateral source rule made such evidence inadmissible at trial of the malpractice action, nevertheless broader rules govern discovery than admissibility of evidence at trial; hence it issued a writ requiring the trial court to reconsider its ruling, which had been based solely on the collateral source rule.

The appellate court believed that although the documents were inadmissible to mitigate damages (because of the collateral source rule), the documents defendant sought might be admissible for a purpose other than mitigating damages, or might lead to the discovery of admissible evidence. "Clearly, discovery of the terms and conditions of State Farm's settlement of the Eins' property damage claim could assist in reaching a settlement or preparing for trial in the present action. Therefore, the first prong of the discoverability test is met." (24 Cal.App.4th at p. 1760.)

As to the second prong, ". . . we conclude it is possible the terms and conditions of the State Farm settlement agreement could be, or could lead to, admissible evidence. The requested information could result in evidence of the extent of the Eins' injury from the alleged malpractice, their motive in bringing the malpractice action, or their bias and credibility as witnesses. For example, the settlement agreement might provide State Farm would make a *future* payment to the Eins up to a certain amount depending on the amount they recover from Norton. In the settlement with State Farm the Eins might acknowledge the two settlements together constitute a complete satisfaction for all their injuries. Or, the settlement agreement might provide that in return for State Farm's payment of their property damage claim the Eins agree to sue Norton for malpractice in obtaining an inadequate settlement with the City and to subrogate State Farm to that claim or turn over the proceeds of any recovery to State Farm." (*Norton* v. *Superior Court*, *supra*, 24 Cal.App.4th at pp. 1761-1762, fn. omitted.)

This case thus suggests that the amount of a settlement can be pertinent to calculating damages in a malpractice suit for loss of the underlying claim.

However, *Norton* differs from our facts in that *no third party privacy interests were involved.* The information sought was that of the malpractice plaintiffs' settlement with their own insurer regarding the precise claim they had lost against the city. Here we deal with settlements made by different plaintiffs, plainly much less closely related to the subject of the malpractice action than was the case in *Norton.*

Also, the *Norton* court did not actually rule that the settlement was discoverable. It merely required the trial court, which had regarded itself as

bound by the collateral source rule, to reconsider the matter in light of the proper rules which require balancing the need for the information against the magnitude of the invasion of privacy. (See, e.g., *Board of Trustees* v. *Superior Court* (1981) 119 Cal.App.3d 516, 524-525 [174 Cal.Rptr. 160].)

■ The court in *Board of Trustees* outlined the weighing process governing discovery of private documents. "Article I, section 1's, 'inalienable right' of privacy is a 'fundamental interest' of our society, essential to those rights ' " 'guaranteed by the First, Third, Fourth, Fifth and Ninth Amendments to the U.S. Constitution.' " ' (*City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 130 . . . ; *White* v. *Davis* (1975) 13 Cal.3d 757, 774-775 . . . .) But another state interest lies in ' "facilitating the ascertainment of truth in connection with legal proceedings" . . . .' (*Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 857 . . . ; *In re Lifschutz* (1970) 2 Cal.3d 415, 432 . . . ; *Morales* v. *Superior Court* (1979) 99 Cal.App.3d 283, 290 . . . .) The constitutional right of privacy is 'not absolute'; it may be abridged when, but only when, there is a 'compelling' and opposing state interest. (*City of Santa Barbara* v. *Adamson, supra,* 27 Cal.3d p. 131; *Britt* v. *Superior Court, supra,* 20 Cal.3d pp. 855-856; *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 864 . . . .) [¶] In an effort to reconcile these sometimes competing public values, it has been adjudged that inquiry into one's private affairs will *not* be constitutionally justified simply because inadmissible, and irrelevant, matter sought to be discovered *might* lead to other, and relevant, evidence. [Citation.] ' "When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information." ' [Citations.]" (119 Cal.App.3d at p. 525, italics in original.)

■ Thus, given the private nature of a confidential settlement of a lawsuit, the burden rests on the proponents of discovery of this information —the plaintiffs here—to justify compelling production of this material. They must do more than show the possibility it may lead to relevant information. Instead they must show a compelling and opposing state interest. (*Board of Trustees* v. *Superior Court, supra,* 119 Cal.App.3d at p. 525.)

■ To prove damages in a legal malpractice action, plaintiff must show the probable value of the lawsuit which he or she has lost. Plaintiff must also prove that careful management of his claim would have resulted in a favorable judgment and collection of same. (*Campbell* v. *Magana* (1960) 184 Cal.App.2d 751, 754 [8 Cal.Rptr. 32].) There is no damage in the absence of these latter elements. (*DiPalma* v. *Seldman* (1994) 27 Cal.App.4th 1499, 1506, 1507 [33 Cal.Rptr.2d 219].)

■ There appear to be no California cases precisely on point here. The *Norton* case is the closest, since it implies that at least on some occasions a settlement agreement may be evidence of the value of a lost claim; but that case did not involve competing privacy interests. Also the case of *Granquist* v. *Sandberg* (1990) 219 Cal.App.3d 181, 187-188 [268 Cal.Rptr. 109], found pertinent to proving the value of a lost claim the fact that a substantial settlement offer had been made on that claim; but again, no third party privacy interests were involved.

The remaining cases which petitioner cites as holding in their favor do not, in fact, rule on the point in issue. They hold that the measure of damages is the value of the claim, but do not discuss whether a settlement of the claim may pertain to that value. (See *Campbell* v. *Magana, supra,* 184 Cal.App.2d at p. 758 [contains only a passing reference to the uselessness of the insurance company's settlement offer to prove the value of the claim]; *Granquist* v. *Sandberg, supra,* 219 Cal.App.3d at p. 187 [states the general rule that the measure of damages is the value of the claim lost]; *Jackson* v. *Johnson* (1992) 5 Cal.App.4th 1350 [7 Cal.Rptr.2d 482] [same]; *Thompson* v. *Halvonik* (1995) 36 Cal.App.4th 657, 661-662 [43 Cal.Rptr.2d 142] [damages must not be speculative].)

Plaintiffs relied below on some out of state authorities, which petitioner claims are distinguishable. The case of *Moores* v. *Greenberg* (1st Cir. 1987) 834 F.2d 1105, involved a claim of legal malpractice for failure to communicate a $90,000 settlement offer to the client; the client then lost the case. The issue was not whether the size of the offer was the measure of the value of the claim, but rather, whether counsel was negligent in causing loss of the offer. *Rizzo* v. *Haines* (1989) 520 Pa. 484 [555 A.2d 58, 90 A.L.R.4th 1007], also involved a failure to communicate and investigate settlement offers, and since the settlement offers were "firm," they were held an appropriate measure of the value of the lost claim. Neither in *Moores* nor in *Rizzo* were the facts like those here, where the settlement offers were not made to these plaintiffs and the settlements sought to be discovered were made by different parties entirely.

Petitioner's position is that any relation between the Muhawi settlement and the value of plaintiffs' lost claims is purely speculative and conjectural. That lawsuit was about alleged substantial damage to the plaintiff doctors' practices because of Kaiser's broken promises about its modus operandi in the acquisition of the Santa Theresa Hospital. Each doctor had different damages; individual practices, and the impact thereon of this hospital, varied; and also some doctors took different mitigation measures which

barred their damages. Furthermore, whatever settlement was achieved might never have been achieved if two more plaintiffs were included in the roster. Thus petitioner states there is no justification at all for invading the traditional confidentiality of their settlement agreements, and this invasion is an unjustified invasion of privacy. It is also, petitioner implies, a precedent which may tend to discourage settlement.

The privacy of a settlement is generally understood and accepted in our legal system, which favors settlement and therefore supports attendant needs for confidentiality. (See, e.g., *Cho* v. *Superior Court* (1995) 39 Cal.App.4th 113, 124 [45 Cal.Rptr.2d 863]; see also *Philippine Export & Foreign Loan Guarantee Corp.* v. *Chuidian* (1990) 218 Cal.App.3d 1058, 1076-1077 [267 Cal.Rptr. 457] [public policy favoring settlement].)

We find a private settlement agreement is entitled to at least as much privacy protection as a bank account or tax information, and analyze the situation on that basis. Plaintiffs seek to rely on *Willis* v. *Superior Court* (1980) 112 Cal.App.3d 277 [169 Cal.Rptr. 301] for the proposition that a settling party has no privacy interest in the amount of the settlement received. The case does not stand for that rule. That case involved a dispute between attorneys dissolving their association and held that between them there was no confidentiality about the fees earned from clients and, inferentially, the amount of settlements underlying the fees. Plainly in such cases the fees would have been payable to the law office and the client would have no reason to expect that other lawyers in the office would not know of the amounts. These facts differ significantly from those here where plaintiffs in a lawsuit settle; the settling plaintiffs surely have no reason to believe that *former* coplaintiffs have an interest in knowing the amount of such a settlement. *Willis* says nothing about the privacy protection to be afforded confidential settlements as against third parties.

Plaintiffs contend: There is no good reason why a lost settlement opportunity is not relevant to proving damages in a malpractice action; no California case holds that it is not relevant; at the discovery stage they need not prove admissibility of evidence anyway, but merely show some usefulness of the evidence to lead to admissible evidence; they cannot explain how the settlement is germane to their claim without actually being able to see it; and they are similarly situated with the settling plaintiffs, since they are all doctors located in the same professional building, with identical liability claims, and therefore there is at least a probable relationship between what the settling doctors recovered and what these doctors lost. They cite a commentator's discussion which opines that a New Jersey court should not

have excluded expert testimony on the possible value of lost settlement; the commentator says it is no more speculative and time consuming proof than the proof generally required in the "case within a case" structure of a malpractice suit. (3 Levy et al., Cal. Torts (1995) Causation, § 32.32[1], pp. 32-41.) They also argue that there is a low degree of privacy interest in a settlement agreement. They cite no authority for that proposition and we disagree. Finally, plaintiffs argue that if we hold the settlement is private and disclosure would be injurious, the proper remedy is not to deny discovery altogether but to mandate protective measures such as redacting identity. We do not believe redacting names would effectively protect the Muhawi plaintiffs' privacy.

These confidential settlement agreements are entitled to privacy protection. Plaintiffs have not made a sufficient showing of compelling need for the information to be entitled to invade that protection. (*Board of Trustees* v. *Superior Court, supra*, 119 Cal.App.3d at pp. 524-526.) Our decision is influenced by the public policy favoring settlements, the parties' expressed desire for confidentiality, and the speculative nature of measuring plaintiffs' damages by these settlements.

## DISPOSITION

Let a writ of mandate issue commanding respondent court to vacate its order granting plaintiffs' motion for order compelling production of documents, and directing respondent court to enter a new and different order denying said motion. Our temporary stay of the discovery order dated March 12, 1996, shall remain in effect pending finality. Each party shall bear its own costs.

Premo, Acting P. J., and Elia, J., concurred.